**No. 2022-1994**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

CITY OF FRESNO, ARVIN-EDISON WATER STORAGE DISTRICT, CHOWCHILLA WATER DISTRICT, DELANO-EARLIMART IRRIGATION DISTRICT, EXETER IRRIGATION DISTRICT, IVANHOE IRRIGATION DISTRICT, LINDMORE IRRIGATION DISTRICT, LINDSAY-STRATHMORE IRRIGATION DISTRICT, LOWER TULE RIVER IRRIGATION DISTRICT, ORANGE COVE IRRIGATION DISTRICT, PORTERVILLE IRRIGATION DISTRICT, SHAFTER-WASCO IRRIGATION DISTRICT, SOUTHERN SAN JOAQUIN MUNICIPAL UTILITY DISTRICT, STONE CORRAL IRRIGATION DISTRICT, TEA POT DOME WATER DISTRICT, TULARE IRRIGATION DISTRICT, LOREN BOOTH LLC, MATTHEW J. FISHER, JULIA K. FISHER, HRONIS INC., CLIFFORD R. LOEFFLER, MAUREEN LOEFFLER, DOUGLAS PHILLIPS, CARALEE PHILLIPS, SAUCELITO IRRIGATION DISTRICT, TERRA BELLA IRRIGATION DISTRICT,

*Plaintiffs-Appellants*,

*v.*

UNITED STATES, SAN LUIS & DELTA-MENDOTA WATER AUTHORITY, SANTA CLARA VALLEY WATER DISTRICT, SAN LUIS WATER DISTRICT, WESTLANDS WATER DISTRICT, GRASSLAND WATER DISTRICT, JAMES IRRIGATION DISTRICT, BYRON BETHANY IRRIGATION DISTRICT, DEL PUERTO WATER DISTRICT, SAN JOAQUIN RIVER EXCHANGE CONTRACTORS WATER AUTHORITY, CENTRAL CALIFORNIA IRRIGATION DISTRICT, FIREBAUGH CANAL WATER DISTRICT, SAN LUIS CANAL COMPANY, COLUMBIA CANAL COMPANY,

*Defendants-Appellees.*

On Appeal from the United States Court of Federal Claims
in Case No. 1:16-cv-01276-AOB, Judge Armando O. Bonilla

**BRIEF FOR DEFENDANT-INTERVENOR-APPELLEES SAN LUIS & DELTA-MENDOTA WATER AUTHORITY, SANTA CLARA VALLEY WATER DISTRICT, SAN LUIS WATER DISTRICT, WESTLANDS WATER DISTRICT, GRASSLAND WATER DISTRICT, JAMES IRRIGATION DISTRICT, BYRON BETHANY IRRIGATION DISTRICT, DEL PUERTO WATER DISTRICT, SAN JOAQUIN RIVER EXCHANGE CONTRACTORS WATER AUTHORITY, CENTRAL CALIFORNIA IRRIGATION DISTRICT, FIREBAUGH CANAL WATER DISTRICT, SAN LUIS CANAL COMPANY, COLUMBIA CANAL COMPANY**

January 17, 2023                    *COUNSEL LISTED ON INSIDE COVER*

DANIEL O'HANLON
KRONICK MOSKOVITZ
    TIEDEMANN & GIRARD
1331 Garden Highway, 2nd Floor
Sacramento, California 95833
(916) 321-4500

REBECCA AKROYD
SAN LUIS & DELTA-MENDOTA
    WATER AUTHORITY
1331 Garden Highway, 2nd Floor
Sacramento, California 95833
(916) 321-4321

*Counsel for the San Luis & Delta-Mendota Water Authority*

PAUL R. MINASIAN
ANDREW J. MCCLURE
JACKSON A. MINASIAN
MINASIAN, MEITH, SOARES,
    SEXTON & COOPER, LLP
1681 Bird Street/P.O. Box 1679
Oroville, California 95965-1679
(530) 533-2885

*Counsel for the San Joaquin River Exchange Contractors Water Authority, San Luis Canal Company, Central California Irrigation District, Firebaugh Canal Water District, and Columbia Canal Company*

ELLEN L. WEHR
GRASSLAND WATER DISTRICT
200 W. Willmott Avenue
Los Banos, California 93635
(209) 826-5188

*Counsel for Grassland Water District*

ANDREW E. SHIPLEY
DANIEL S. VOLCHOK
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue N.W.
Washington, D.C. 20006
(202) 663-6000

*Counsel for Westlands Water District*

ANTHONY T. FULCHER
SANTA CLARA VALLEY WATER
    DISTRICT
5750 Almaden Expressway
San Jose, California 95118
(408) 265-2600

*Counsel for the Santa Clara Valley Water District*

DAVID T. RALSTON, JR.
FRANK S. MURRAY
JULIA DI VITO
FOLEY & LARDNER LLP
3000 K Street N.W., Suite 600
Washington, D.C. 20007

*Counsel for the Byron Bethany Irrigation District, Del Puerto Water District, and James Irrigation District*

ROBERT M. PALUMBOS
DUANE MORRIS LLP
1 Market, Spear Tower, Suite 2200
San Francisco, California 94105
(415) 957-3000

*Counsel for San Luis Water District*

# CERTIFICATE OF INTEREST

Counsel for the San Luis & Delta-Mendota Water Authority certifies the following:

**1.      Represented Entities** (Circuit Rule 47.4(a)(1)):  Provide the full names of all entities represented by undersigned counsel in this case.

San Luis & Delta-Mendota Water Authority

**2.      Real Party in Interest** (Circuit Rule 47.4(a)(2)):  Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.

None.

**3.      Parent Corporations and Stockholders** (Circuit Rule 47.4(a)(3)):  Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

**4.      Legal Representatives** (Circuit Rule 47.4(a)(4)):  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.

None.

**5.      Related Cases** (Circuit Rule 47.4(a)(5); *see also* Circuit Rule 47.5(b)):  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.

*City of Fresno v. United States*, No. 1:21-cv-00375-AOB (Fed. Cl.)

**6.      Organizational Victims and Bankruptcy Cases** (Circuit Rule 47.4(a)(6)):  Provide any information required under Federal Rules of Appellate Procedure 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).

None.

January 17, 2023                                        /s/ Daniel O'Hanlon
                                                                    DANIEL O'HANLON

# CERTIFICATE OF INTEREST

Counsel for Westlands Water District certifies the following:

**1.    Represented Entities** (Circuit Rule 47.4(a)(1)):  Provide the full names of all entities represented by undersigned counsel in this case.

Westlands Water District

**2.    Real Party in Interest** (Circuit Rule 47.4(a)(2)):  Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.

None.

**3.    Parent Corporations and Stockholders** (Circuit Rule 47.4(a)(3)):  Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

**4.    Legal Representatives (**Circuit Rule 47.4(a)(4)):  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.

WILMER CUTLER PICKERING HALE AND DORR LLP:  Philip E. Beshara

**5.    Related Cases** (Circuit Rule 47.4(a)(5); *see also* Circuit Rule 47.5(b)):  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.

*City of Fresno v. United States*, No. 1:21-cv-00375-AOB (Fed. Cl.)

**6.    Organizational Victims and Bankruptcy Cases** (Circuit Rule 47.4(a)(6)):  Provide any information required under Federal Rules of Appellate Procedure 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).

None.

January 17, 2023

/s/ Andrew E. Shipley
ANDREW E. SHIPLEY

## CERTIFICATE OF INTEREST

Counsel for the Santa Clara Valley Water District certifies the following:

**1.     Represented Entities** (Circuit Rule 47.4(a)(1)):  Provide the full names of all entities represented by undersigned counsel in this case.

Santa Clara Valley Water District

**2.     Real Party in Interest** (Circuit Rule 47.4(a)(2)):  Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.

None.

**3.     Parent Corporations and Stockholders** (Circuit Rule 47.4(a)(3)): Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

**4.     Legal Representatives** (Circuit Rule 47.4(a)(4)):  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.

None.

**5.     Related Cases** (Circuit Rule 47.4(a)(5); *see also* Circuit Rule 47.5(b)):  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.

*City of Fresno v. United States*, No. 1:21-cv-00375-AOB (Fed. Cl.).

**6.     Organizational Victims and Bankruptcy Cases** (Circuit Rule 47.4(a)(6)):  Provide any information required under Federal Rules of Appellate Procedure 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).

None.

January 17, 2023                    /s/ Anthony T. Fulcher
                                                 ANTHONY T. FULCHER

## CERTIFICATE OF INTEREST

Counsel for the Byron Bethany Irrigation District, Del Puerto Water District and James Irrigation District certifies the following:

**1.     Represented Entities** (Circuit Rule 47.4(a)(1)):  Provide the full names of all entities represented by undersigned counsel in this case.

Byron Bethany Irrigation District, Del Puerto Water District and James Irrigation District

**2.     Real Party in Interest** (Circuit Rule 47.4(a)(2)):  Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.

None.

**3.     Parent Corporations and Stockholders** (Circuit Rule 47.4(a)(3)):  Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

**4.     Legal Representatives** (Circuit Rule 47.4(a)(4)):  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.

FOLEY & LARDNER LLP:  Anna S. Ross, Micah Zomer

**5.     Related Cases** (Circuit Rule 47.4(a)(5); *see also* Circuit Rule 47.5(b)):  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.

*City of Fresno v. United States*, No. 1:21-cv-00375-AOB (Fed. Cl.)

**6.     Organizational Victims and Bankruptcy Cases** (Circuit Rule 47.4(a)(6)):  Provide any information required under Federal Rules of Appellate Procedure 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).

None.

January 17, 2023                           /s/ David T. Ralston, Jr.
                                           DAVID T. RALSTON, JR.

# CERTIFICATE OF INTEREST

Counsel for the San Joaquin River Exchange Contractors Water Authority, San Luis Canal Company, Central California Irrigation District, Firebaugh Canal Water District, and Columbia Canal Company certifies the following:

**1.     Represented Entities** (Circuit Rule 47.4(a)(1)):  Provide the full names of all entities represented by undersigned counsel in this case.

San Joaquin River Exchange Contractors Water Authority, San Luis Canal Company, Central California Irrigation District, Firebaugh Canal Water District and Columbia Canal Company

**2.     Real Party in Interest** (Circuit Rule 47.4(a)(2)):  Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.

None.

**3.     Parent Corporations and Stockholders** (Circuit Rule 47.4(a)(3)):  Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

**4.     Legal Representatives** (Circuit Rule 47.4(a)(4)):  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.

None.

**5.     Related Cases** (Circuit Rule 47.4(a)(5); *see also* Circuit Rule 47.5(b)):  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.

None.

**6.     Organizational Victims and Bankruptcy Cases** (Circuit Rule 47.4(a)(6)):  Provide any information required under Federal Rules of Appellate

Procedure 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).

 None.

January 17, 2023
/s/ Paul R. Minasian

PAUL R. MINASIAN

# CERTIFICATE OF INTEREST

Counsel for the Grassland Water District certifies the following:

**1.    Represented Entities** (Circuit Rule 47.4(a)(1)): Provide the full names of all entities represented by undersigned counsel in this case.

Grassland Water District

**2.    Real Party in Interest** (Circuit Rule 47.4(a)(2)): Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

**3.    Parent Corporations and Stockholders** (Circuit Rule 47.4(a)(3)): Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

**4.    Legal Representatives** (Circuit Rule 47.4(a)(4)): List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court.

None.

**5.    Related Cases** (Circuit Rule 47.4(a)(5); *see also* Circuit Rule 47.5(b)): Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case.

*City of Fresno v. United States*, No. 1:21-cv-00375-AOB (Fed. Cl.)

**6.    Organizational Victims and Bankruptcy Cases** (Circuit Rule 47.4(a)(6)): Provide any information required under Federal Rules of Appellate Procedure 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).

None.

January 17, 2023                                                    /s/ Ellen Wehr
                                                                      ELLEN WEHR

# CERTIFICATE OF INTEREST

Counsel for the San Luis Water District certifies the following:

**1.    Represented Entities** (Circuit Rule 47.4(a)(1)): Provide the full names of all entities represented by undersigned counsel in this case.

San Luis Water District

**2.    Real Party in Interest** (Circuit Rule 47.4(a)(2)): Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

**3.    Parent Corporations and Stockholders** (Circuit Rule 47.4(a)(3)): Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

**4.    Legal Representatives** (Circuit Rule 47.4(a)(4)): List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court.

None.

**5.    Related Cases** (Circuit Rule 47.4(a)(5); *see also* Circuit Rule 47.5(b)): Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case.

*City of Fresno v. United States*, No. 1:21-cv-00375-AOB (Fed. Cl.)

**6.    Organizational Victims and Bankruptcy Cases** (Circuit Rule 47.4(a)(6)): Provide any information required under Federal Rules of Appellate Procedure 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).

None.

January 17, 2023                         /s/ Robert M. Palumbos
                                         ROBERT M. PALUMBOS

# TABLE OF CONTENTS

Page

CERTIFICATES OF INTEREST ................................................................. i

TABLE OF AUTHORITIES ................................................................... xi

RELATED CASES ............................................................................... 1

ISSUES PRESENTED ......................................................................... 1

STATEMENT ................................................................................... 1

SUMMARY OF ARGUMENT ................................................................. 1

ARGUMENT ..................................................................................... 6

I.      STANDARD OF REVIEW ............................................................... 6

II.     JUDGE BONILLA PROPERLY GRANTED SUMMARY JUDGMENT TO
        DEFENDANTS ON PLAINTIFFS' BREACH-OF-CONTRACT CLAIM ...... 6

        A.      The Friant And Exchange Contracts Required
                Reclamation To Allocate Water As It Did In 2014 ........... 6

                1.      In 2014, Reclamation Was Contractually Obligated
                        To Deliver To The Exchange Contractors All The
                        Substitute Water It Supplied Them ........................... 7

                2.      The Exchange Contractors' Rights To Substitute
                        Water Take Precedence Over Plaintiffs'
                        Contractual Water-Delivery Right ........................... 9

                3.      Under The Friant Contract, Reclamation Cannot
                        Be Liable For Breach Of Contract Based On
                        Shortages Caused By Drought Or By Actions
                        Taken To Meet Reclamation's Legal Obligations ....... 11

        B.      Plaintiffs' Challenges To Judge Bonilla's Breach-Of-
                Contract Ruling Lack Merit ...................................... 13

                1.      Plaintiffs Offer Multiple Mischaracterizations ........... 13

2.     Plaintiffs' Myriad Efforts To Overcome The Plain Language Of The Relevant Contracts—Language That Defeats Their Breach Claim—Are Unavailing ...............15

a.     Article 4(b) was not triggered in 2014 ...........................16

b.     Plaintiffs' contention that their contractual rights are not subordinate to those of the Exchange Contractors is unpreserved and meritless ..........................................................................17

c.     Substitute water includes SJR water..............................24

d.     Reclamation's storage of SJR water in Millerton Lake in 2014 did not breach the Friant Contract ................................................................28

e.     Plaintiffs' arguments regarding article 13(b) of the Friant Contract are baseless..................................30

C.     FWA's Additional Arguments Fail ......................................................35

III.     JUDGE KAPLAN CORRECTLY DISMISSED THE TAKINGS CLAIMS BROUGHT BY OR ON BEHALF OF INDIVIDUAL WATER USERS........................47

A.     Plaintiffs' Argument For A Property Right In SJR Water Is Not Supported By Any Case They Cite (Or Any Other Law)................................................................................................48

B.     Under California Law Water Users Do Not Acquire Water Rights Through Use Of Water Supplied To Them By A District Or Utility......................................................................52

C.     Plaintiffs Cannot Claim Rights to Water Greater Than The Rights Afforded by the Friant Contract .........................54

CONCLUSION ........................................................................................56

STATEMENT OF CONSENT

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Abatti v. Imperial Irrigation District*, 52 Cal.App.5th 236 (2020)..........................53

*Adkisson v. Jacobs Engineering Group, Inc.*, 35 F.4th 421 (6th Cir. 2022) ................................................................................................39

*Artichoke Joe's California Grand Casino v. Norton*, 353 F.3d 712 (9th Cir. 2003).............................................................................. 39-40

*Baggett Transportation Company v. United States*, 969 F.2d 1028 (Fed. Cir. 1992)................................................................................54

*Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281 (1974)..............................................................................43

*C. Sanchez & Son, Inc. v. United States*, 6 F.3d 1539 (Fed. Cir. 1993)..................21

*California v. United States*, 438 U.S. 645 (1978).....................................................49

*Carbino v. West*, 168 F.3d 32 (Fed. Cir. 1999).......................................................48

*Casitas Municipal Water District v. United States*, 543 F.3d 1276 (Fed. Cir. 2008)................................................................................48

*Cup v. AMPCO Pittsburgh Corporation*, 903 F.3d 58 (3d Cir. 2018) ....................24

*Dutcher v. Matheson*, 840 F.3d 1183 (10th Cir. 2016)...........................................39

*Flexfab, LLC v. United States*, 424 F.3d 1254 (Fed. Cir. 2005).............................22

*H.F. Allen Orchards v. United States*, 749 F.2d 1571 (Fed. Cir. 1984).................50

*Ickes v. Fox*, 300 U.S. 82 (1937).............................................................................49

*In re Applied Materials, Inc.*, 692 F.3d 1289 (Fed. Cir. 2012) ..............................43

*In re Huston*, 308 F.3d 1267 (Fed. Cir. 2002) .......................................................43

*John Bean Technologies Corporation v. Morris & Associates*, 988 F.3d 1334 (Fed. Cir. 2021) ....................................................34

*Klamath Irrigation District v. United States*, 635 F.3d 505 (Fed. Cir. 2011) ...........................................................................49, 50

*Klamath Irrigation District v. United States*, 67 Fed. Cl. 504 (2005)....................49

*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995) ....................20

*Members of the Peanut Quota Holders Association v. United States*, 421 F.3d 1323 (Fed. Cir. 2005) ...........................................48

*National Organization of Veterans' Advocates, Inc. v. Secretary of Veterans Affairs*, 927 F.3d 1263 (Fed. Cir. 2019) ..............................45

*Nebraska v. Wyoming*, 325 U.S. 589 (1945) ............................................49

*Nevada v. United States*, 463 U.S. 110 (1983) .........................................49

*O'Neill v. United States*, 50 F.3d 677 (9th Cir. 1995) ................................12

*People v. Shirokow*, 605 P.2d 859 (Cal. 1980)..................................... 50-51

*Piszel v. United States*, 833 F.3d 1366 (Fed. Cir. 2016).........................54

*Ponderosa Telephone Company v. Public Utilities Commission*, 197 Cal.App.4th 48 (2011) .........................................................53

*San Carlos Apache Tribe v. United States*, 639 F.3d 1346 (Fed. Cir. 2011) ....................................................................19

*San Luis Unit Food Producers v. United States*, 772 F.Supp.2d 1210 1244 (E.D. Cal. 2011)..........................................................54

*SmithKline Beecham Corporation v. Apotex Corporation*, 439 F.3d 1312 (Fed. Cir. 2006)..........................................................34

*Southern California Federal Savings & Loan Association v. United States*, 422 F.3d 1319 (Fed. Cir. 2005)....................................... 20-21

*Stockton East Water District v. United States*, 583 F.3d 1344 (Fed. Cir. 2009) ...............................................................12, 32, 33

*Tehama-Colusa Canal Authority v. U.S. Department of Interior*, 721 F.3d 1086 (9th Cir. 2013) ..............................................................55, 56

*United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016)...................40

*Washoe County v. United States*, 319 F.3d 1320 (Fed. Cir. 2003).........................48

*Wasica Finance GmbH v. Continental Automotive Systems, Inc.*, 853 F.3d 1272 (Fed. Cir. 2017) ..............................................................34

*Westlands Water District v. Firebaugh Canal*, 10 F.3d 667 (9th Cir. 1993) ............................................................................................12

## STATUTES AND RULES

43 U.S.C.
  § 372.............................................................................................49
  § 423e...........................................................................................55

California Water Code
  § 102.............................................................................................51
  § 11128..........................................................................................55
  § 11460..........................................................................................55
  § 11463..........................................................................................55
  §§ 20500-29978 ...............................................................................52
  § 22262..........................................................................................52
  §§ 34000-38501 ...............................................................................52
  § 35428..........................................................................................53
  §§ 39000-48401 ...............................................................................52
  § 43505..........................................................................................53

Federal Rule of Appellate Procedure 28 .................................................1

## OTHER AUTHORITIES

*Black's Law Dictionary* (6th ed. 1990)...................................................21

## RELATED CASES

Defendant-intervenors agree with plaintiffs that the only related case under Circuit Rule 47.5 is *City of Fresno v. United States*, No. 1:21-cv-00375-AOB (Fed. Cl.). *See* Appx22 n.2.

## ISSUES PRESENTED

Whether the trial court correctly concluded:

1.    that plaintiffs' breach-of-contract claim fails as a matter of law, and

2.    that no plaintiff has standing to pursue a takings claim by or on behalf of individual water users.

## STATEMENT

Defendant-intervenors adopt the statement in defendant's brief. *See* Fed. R. App. P. 28(i).

## SUMMARY OF ARGUMENT

Judge Bonilla properly entered summary judgment for defendants and defendant-intervenors on plaintiffs' breach-of-contract claim. Plaintiffs assert that the United States—specifically the Interior Department's Bureau of Reclamation— breached its water-supply contracts with plaintiffs (contracts the trial court collectively referred to as the "Friant Contract"). In particular, plaintiffs contend that in 2014, Reclamation breached the provision of the Friant Contract that says Reclamation will not provide the Exchange Contractors with more water from the

San Joaquin River ("SJR") than required by the Exchange Contract.  As Judge

Bonilla recognized, that claim fails for several reasons.

First, the Friant Contract explicitly states that plaintiffs' contractual right to

receive water from Reclamation is "subject to," i.e., subordinate to, the Exchange

Contractors' rights under the Exchange Contract.  Because of the severe drought in

2014, Reclamation did not have enough water both to supply the Exchange

Contractors with the amount of water to which they are entitled under the

Exchange Contract and to deliver to plaintiffs the amount of water to which they

claim entitlement.  Reclamation thus provided the available water to the Exchange

Contractors.  Because of the subordination of plaintiffs' rights, and because the

amount of water Reclamation gave the Exchange Contractors was not more than

the Exchange Contract required (in fact it was less), there was no breach of the

Friant Contract.

Second, the Friant Contract provides immunity to Reclamation for any

shortage in the amount of water it had available for delivery to plaintiffs that is

caused either by drought or by acts Reclamation takes to comply with legal

obligations, unless Reclamation acted arbitrarily, capriciously, or unreasonably.

The shortage in 2014 resulted from both drought and the need to comply with legal

obligations (i.e., Reclamation's water-delivery obligation to the Exchange

Contractors).  Reclamation's conduct in 2014 was not remotely arbitrary, capricious, or unreasonable, so Reclamation is immune from liability.

Plaintiffs' and their amici's contrary arguments all lack merit.  For example, plaintiffs and their amici contend that Reclamation's water-delivery obligation to the Exchange Contractors in 2014 was governed not by article 8 of the Exchange Contract, as Reclamation has consistently maintained, but by article 4(b), which provides for lower water amounts.  But article 4(b) applies only when Reclamation is "unable" to delivery substitute water to the Exchange Contractors from certain sources.  As plaintiffs' own expert testified, at no time in 2014 was Reclamation "unable" to make such deliveries.

Similarly, plaintiffs deny that their contract subordinates their rights to those of the Exchange Contractors.  That argument is forfeited because it was never made below.  It is also meritless because it ignores the plain language of the Friant Contract, including language providing that plaintiffs' rights are "subject to" those of the Exchange Contractors.  Plaintiffs' efforts to avoid this clear language violate multiple bedrock canons of contract interpretation.

Plaintiffs' remaining contract arguments are likewise meritless.  They claim there was a breach because SJR water is not "substitute water" under the Exchange Contract.  But the contact defines "substitute water" as water "regardless of source."  They also claim that there was a breach because Reclamation stored the

- 3 -

water that it delivered to the Exchange Contractors in Millerton Lake prior to the delivery.  But plaintiffs have never pointed to any provision of the Friant Contract that prohibits the government from storing water there, because there is none. Finally, as to the immunity provision in the Friant Contract (which again is a separate ground for rejecting the breach claim), plaintiffs say that there is no immunity because there was water available that Reclamation could have delivered to them instead of to the Exchange Contractors.  But that ignores Reclamation's legal obligation to prioritize the Exchange Contractors' water-delivery right over that of plaintiffs.  And while plaintiffs repeatedly claim that Judge Bonilla erroneously held that Reclamation was immune because it committed a "reasonable breach," that is not at all what Judge Bonilla held.  He held instead that there was no breach, in part because the Friant Contract immunized Reclamation's acts taken in the face of a shortage to meet its legal obligations.

Amicus FWA's arguments regarding the breach-of-contract claim largely track plaintiffs'—to the extent FWA raises additional arguments the Court should not even consider them—and thus fail for essentially the same reasons.  The entry of summary judgment should be affirmed.

The dismissal of plaintiffs' taking claim should likewise be affirmed. Plaintiffs do not appeal the dismissal as to all plaintiffs but only as to what they call "Growers," meaning (1) the individual plaintiffs and (2) non-party water users

who live within the boundaries of a district plaintiff, as to whom the district plaintiffs assert a takings claim on a representative basis.  No one in either of these groups, however, has a property right in water received from Reclamation.  No one in either group therefore has standing to maintain (or have maintained on her behalf) a takings claim.

Plaintiffs' contrary claim rests on California law only; plaintiffs' opening brief makes clear that they do not claim a property right under federal law.  (Any such claim would fail in any event).  But the cases from this Court and the Supreme Court that plaintiffs cite say nothing about a property right under California law (or federal law, for that matter) based on beneficial use of water delivered as part of a Reclamation project; each case involved water rights arising under the law of a state other than California.

The lack of supporting case law for plaintiffs' claim is unsurprising, as there are two separate reasons (independent of the reasons Chief Judge Kaplan gave, which defendant's brief addresses) why no individual plaintiff or other user of water received from a district plaintiff has a property right under California law by virtue of their water use.  First, California statutes expressly—and sensibly— foreclose such a right based on water received from any of the three district types at issue here: irrigation districts, water districts, and utilities.  Second, even if there were any such right, it would be limited by the terms of the Friant Contract,

without which plaintiffs would have no right even to receive the water at issue here. Any such property right, therefore—like all other rights conferred by the Friant Contract—would be subordinate to the Exchange Contractors' water-delivery right. And for all the reasons that Reclamation's conduct in 2014 did not breach the Friant Contract, it also would not constitute a taking of any contract-based property right.

## ARGUMENT

### I.  STANDARD OF REVIEW

Defendant-intervenors adopt defendant's standard-of-review section.

### II.  JUDGE BONILLA PROPERLY GRANTED SUMMARY JUDGMENT TO DEFENDANTS ON PLAINTIFFS' BREACH-OF-CONTRACT CLAIM[1]

#### A.  The Friant And Exchange Contracts Required Reclamation To Allocate Water As It Did In 2014

Plaintiffs claim that in 2014, the Bureau of Reclamation breached the Friant Contract by not supplying them with the SJR water to which they assert entitlement, delivering that water instead to the Exchange Contractors. Judge Bonilla correctly rejected that claim, recognizing that (1) the 2014 drought left Reclamation with insufficient water to both supply the Exchange Contractors with

---

[1] As noted, Judge Bonilla referred collectively to plaintiffs' contracts with Reclamation as the "Friant Contract," so this brief does likewise. The specific contract that "Friant Contract" describes (Appx345-495) "is representative of the contracts at issue …, which are substantively identical," Appx24.

the quantity they were entitled to under the Exchange Contract and give plaintiffs the quantity to which they claim entitlement, and (2) the Friant Contract makes Reclamation's water-delivery obligation to plaintiffs subordinate to Reclamation's water-delivery obligation under the Exchange Contract.  Because Reclamation thus "was contractually … required to deliver the as-delivered … water to satisfy the Exchange Contractors' water entitlements—superior to the Friant Contractors' rights," doing so could not "constitute a breach of the Friant Contract."  Appx41.  Judge Bonilla further recognized that the Friant Contract immunizes Reclamation from liability for any failure to deliver water that is caused either by drought or by Reclamation's satisfaction of other legal obligations—and here it was caused by both.

  1.  *In 2014, Reclamation Was Contractually Obligated To Deliver To The Exchange Contractors All The Substitute Water It Supplied Them*

  Plaintiffs' breach-of-contract claim depends on their premise (e.g., Br. 20) that Reclamation delivered more water to the Exchange Contractors than the Exchange Contract required.  That premise is wrong.

  As its title indicates, the Exchange Contract provides for an "exchange" between Reclamation and the Exchange Contractors:  If Reclamation supplies the Exchange Contractors with "substitute water" in the amounts specified by the

contract, then it has the right to use SJR water to which the Exchange Contractors

would otherwise have reserved rights.  Article 4(a) lays out this basic bargain:

> The United States may hereafter … store, divert, dispose of and
> otherwise use, within and without the watershed of the … San Joaquin
> River, the [Exchange Contractors'] reserved waters of said river for
> beneficial use by others than the [Exchange Contractors] so long as,
> and only so long as, the United States does deliver to the [Exchange
> Contractors] … substitute water in conformity with this contract.

Appx315-316.  The contract then specifies that to be "in conformity with" the

Exchange Contract, Appx316, Reclamation must each year deliver to the Exchange

Contractors a particular quantity of substitute water, measured in acre-feet.  (An

acre-foot is the amount of water required to cover an acre of land with water one

foot deep.)  That quantity depends on whether a year is "critical" or "noncritical,"

which in turn depends (under article 7 of the contract) on Reclamation's forecast of

how much water will be available throughout the Central Valley Project ("CVP").

Appx325-329.  In non-critical years, article 8 requires Reclamation to deliver to

the Exchange Contractors 840,000 acre-feet of substitute water.  Appx326.  In

critical years, the amount is 650,000 acre-feet.  Appx327.

Not surprisingly given the historic drought in 2014, Reclamation deemed

that year to be a critical year.  Appx2123.  Reclamation was thus obligated by

article 8 to give the Exchange Contractors 650,000 acre-feet of substitute water.

*Id.*; Appx327.

As plaintiffs' opening brief acknowledges (p.32), water sources other than the SJR were insufficient to supply the Exchange Contractors with 650,000 acre-feet of water in 2014, Appx2123.  Given this, Reclamation used SJR water to try to meet its 650,000-acre-feet obligation.  *Id.*  Even so, Reclamation could deliver only about 540,000 acre-feet.  Appx544.  Approximately 200,000 acre-feet of that was SJR water; the rest came from other sources.  Appx566.

In short, although the 2014 drought prevented Reclamation from supplying the Exchange Contractors with all the water to which they were contractually entitled—and likewise left Reclamation with no water for plaintiffs beyond "health and safety" water, Appx1899-1900—all the water Reclamation *did* deliver to the Exchange Contractors was owed to them under the Exchange Contract.

> 2. *The Exchange Contractors' Rights To Substitute Water Take Precedence Over Plaintiffs' Contractual Water-Delivery Right*

Having recognized the Exchange Contractors' contractual right to all the water they received from Reclamation in 2014, Judge Bonilla correctly explained that Reclamation did not breach the Friant Contract by delivering that water to the Exchange Contractors rather than to plaintiffs, because the Friant Contract makes the Exchange Contractors' water-delivery right superior to plaintiffs'.

Specifically, article 3(n) of the Friant Contract provides that plaintiffs' "rights … under this Contract are subject to the terms of" the Exchange Contract. Appx368.  This "subject to" language, Judge Bonilla observed, means "the

contractual rights of the Friant Contractors are subordinate to those of the Exchange Contractors.  In other words, at all times, the Exchange Contractors have a superior claim to CVP water than do the Friant Contractors."  Appx32 (citation omitted).  This reading accords with article 16 of the Exchange Contract, which provides that nothing in that contract "affect[s] or interfere[s] … any right of the Contracting Entities to the use of the waters of the San Joaquin River."  Appx340.

Confirmation of the subordination of plaintiffs' water-delivery right appears in article 3(a) of the Friant Contract, which provides that Reclamation's water-delivery obligation to plaintiffs is "subject to … Articles 12 and 13 of this Contract."  Appx362.  Article 12, in turn, provides that Reclamation "shall make all reasonable efforts to optimize delivery of the Contract Total *subject to* … the obligations of the United States under existing contracts[.]"  Appx392 (emphasis added).  One such "existing contract[]"is the Exchange Contract.

Put simply, the Friant Contract repeatedly subordinates plaintiffs' right to receive water from Reclamation to the Exchange Contractors' rights under the Exchange Contract, including the article 8 right to substitute water.  In Judge Bonilla's words, Reclamation "necessarily tapped San Joaquin River water to satisfy the government's superior contractual and legal obligations under Article 8 of the Exchange Contract.  Consequently, there was no breach of Article 3(n) of the subordinate Friant Contract."  Appx43.

### 3.     Under The Friant Contract, Reclamation Cannot Be Liable For Breach Of Contract Based On Shortages Caused By Drought Or By Actions Taken To Meet Reclamation's Legal Obligations

As Judge Bonilla explained, plaintiffs' breach-of-contract claim also fails under articles 13(b) and 19(a) of the Friant Contract.  Article 13(b) provides that:

> If there is a Condition of Shortage because of … drought … or actions taken by the Contracting Officer to meet legal obligations … then, except as provided in subdivision (a) of Article 19 of this Contract, no liability shall accrue against the United States … for any damage … arising therefrom.

Appx394.  And article 19(a) provides that:

> Where the terms of this Contract provide for actions to be based upon the opinion or determination of either party …, said terms shall not be construed as permitting such action to be predicated upon arbitrary, capricious, or unreasonable opinions or determinations.

Appx402.  Articles 13(b) and 19(a) thus, in Judge Bonilla's words, "effectively immunize[] the government from a breach of contract claim where, as here, the Court finds that the water allocation decisions and actions of the Contracting Officer in the face of a severe drought, coupled with Reclamation's legal obligations under the Exchange Contract, were not 'arbitrary, capricious, or unreasonable.'"  Appx43-44 (footnote omitted).  Put differently, it was manifestly not "arbitrary, capricious, or unreasonable" for Reclamation to make water-allocation decisions that comported with the priority scheme set forth in the Friant Contract.

- 11 -

That conclusion is confirmed by *Stockton East Water District v. United States*, 583 F.3d 1344 (Fed. Cir. 2009).  Addressing an immunity clause like the one in article 13(b), *Stockton* determined that for years in which Reclamation demonstrated that "general drought conditions" caused a shortage, a breach-of-contract claim could not succeed.  *Id.* at 1363-1364; *see also O'Neill v. United States*, 50 F.3d 677, 683-684 (9th Cir. 1995) (immunity clause in a CVP contract absolved the United States from liability for reallocating water from irrigation to environmental uses because actions were taken to meet legal obligations); *Westlands Water District v. Firebaugh Canal*, 10 F.3d 667, 676 (9th Cir. 1993) (similar).  The same conclusion is warranted here.[2]

\*     \*     \*

The 2014 drought left Reclamation with insufficient water to both fully meet its article 8 obligations to the Exchange Contractors and deliver to plaintiffs the water to which they claim entitlement.  Consistent with the Friant Contract,

---

[2] The contract in *Stockton* required Reclamation to deliver *guaranteed* minimum quantities of water to the plaintiffs.  *See* 583 F.3d at 1351.  Thus, the question there was whether, despite Reclamation's breach in failing to deliver those quantities, it was shielded from liability—and the answer was yes when drought prevented compliance.  Here, plaintiffs have *no* guaranteed minimum quantity, as their claims are subject to superior claims, including of the Exchange Contractors'.  That is why—as explained in Parts II.A.1-2—plaintiffs' breach claim fails even apart from articles 13(b) and 19(a) of the Friant Contract.

Reclamation prioritized water deliveries to the Exchange Contractors.  Judge

Bonilla correctly concluded that doing so did not breach the Friant Contract.

### B.    Plaintiffs' Challenges To Judge Bonilla's Breach-Of-Contract Ruling Lack Merit

Plaintiffs launch various attacks on Judge Bonilla's breach-of-contact ruling.

But none has merit because none shows that in 2014, Reclamation delivered more

SJR water to the Exchange Contractors than the Exchange Contract required, i.e.,

none shows that Reclamation could have given plaintiffs more SJR water without

reducing even further its under-delivery to the Exchange Contractors.[3]

### 1.    *Plaintiffs Offer Multiple Mischaracterizations*

As an initial matter, plaintiffs repeatedly mischaracterize Judge Bonilla's

decision and appellees' position in this case.

For example, plaintiffs contend (e.g., Br. 1-2) that Judge Bonilla "h[e]ld[]

that [Reclamation] had not breached [its] … contracts by providing … water to the

Exchange Contractors *in excess of what was required by … the Exchange*

---

[3] Plaintiffs' brief does not argue (and hence the argument is waived) that Judge Bonilla erred in reading the Exchange Contract as requiring Reclamation to give the Exchange Contractors 650,000 acre-feet of substitute water in 2014.  This omission is notable because that argument (i.e., that article 8 of the Exchange Contract sets a *maximum* delivery amount, not a minimum) was central to plaintiffs' summary-judgment motion, *see* Appx1442, Appx1457, Appx1464, Appx1471, Appx1473.  But after defendants explained the flaws in that argument, *see, e.g.*, Appx1929-1940, plaintiffs effectively abandoned it, shifting to other arguments in their reply (and now on appeal), *see* Appx2240-2243.  As explained herein, however, the arguments to which plaintiffs resorted fare no better.

*Contract*, rather than delivering that water to Appellants *as required by the Friant Contracts*" (emphases added). In fact, Judge Bonilla held, as explained, that there was no breach precisely because (1) the water Reclamation delivered to the Exchange Contractors in 2014 was *not* "in excess of what was required by the … Exchange Contract," and (2) "delivering that water to Appellants" was *not* "required by the Friant Contracts," *id.*

Plaintiffs likewise mischaracterize the decision below in stating (Br. 31) that Judge Bonilla "ignored Article 4(b) of the Exchange Contract." To the contrary, he twice recited both sides' arguments regarding article 4, Appx29-30, Appx41-42, and explained that defendants' reading was correct because it gives article 4(b) a "harmonious interpretation with the surrounding contractual provisions and the fundamental exchange agreement," Appx41, "[i]n contrast to the plaintiffs' position," Appx42.

Plaintiffs again engage in misrepresentation in stating that "contrary to the trial court's ruling, the 'reasonableness' of the United States' actions in 2014 is irrelevant" because "[t]his Court has expressly held a reasonable breach of a contract is still a breach." Br. 15 (quotation marks omitted). Judge Bonilla did not reject plaintiffs' breach-of-contract claim on the ground that Reclamation committed a "reasonable breach," *id.* He rejected it because plaintiffs' "claimed entitlement to the San Joaquin River water … in 2014 is contrary to the express

- 14 -

terms of the Friant Contract as well as the Exchange Contract." Appx37. That conclusion was correct for the reasons given earlier, and plaintiffs' mischaracterizations of the decision below provide no basis to reverse.

Plaintiffs' mischaracterizations of defendants' position likewise provide no basis to do so. To take just one example, plaintiffs declare that "it is *undisputed* that there was water available for delivery to the[m]" in 2014. Br. 2 (emphasis added). That is wrong: Defendants' position throughout this litigation has been that once Reclamation allocated all the available water to try to fulfill its (contractually superior) water-delivery obligation to the Exchange Contractors, there was no water left for plaintiffs beyond the "health and safety" water that Reclamation gave them. *See, e.g.*, Appx1927-1928.

> 2. *Plaintiffs' Myriad Efforts To Overcome The Plain Language Of The Relevant Contracts—Language That Defeats Their Breach Claim—Are Unavailing*

As plaintiffs note (e.g., Br. 19-21), the Friant Contract provides that Reclamation will not deliver to the Exchange Contractors more SJR water than the Exchange Contract requires. Appx368. But that does nothing to warrant reversal because in 2014, Reclamation delivered to the Exchange Contractors *less* water than article 8 of the Exchange Contract required. *See supra* pp.8-9. Plaintiffs offer five basic arguments as to why, nonetheless, Reclamation supposedly breached the Friant Contract in 2014. All five fail.

a.    Article 4(b) was not triggered in 2014

Plaintiffs assert (Br. 27-33) that in 2014, article 4(b) of the Exchange

Contract, not article 8, governed how much water Reclamation had to give the

Exchange Contractors, and that Reclamation gave them more than article 4(b)

required.  In particular, plaintiffs argue (Br. 32) that "whenever" Reclamation is

unable to deliver the "substitute water quantities specified" by article 8, article 4

governs.  Judge Bonilla rightly rejected that argument.  *See* Appx41-43.[4]

Article 4(b) provides that "[w]henever the United States is temporarily

unable … to deliver to the Contracting Entities substitute water from the Delta-

Mendota Canal or other sources, water will be delivered from the San Joaquin

River" in the amounts the article then specifies.  Appx316.  Article 4(b) thus

governs only when Reclamation is entirely (but only "temporarily") disabled from

supplying substitute water to the Exchange Contractors from sources other than the

San Joaquin River.  That did not occur in 2014; the drought *limited* how much non-

---

[4] Plaintiffs below twice flip-flopped on whether article 4(b) governed in 2014.  In their summary-judgment motion, they argued that it did.  *See* Appx1466-1468 (argument section titled "Article 4(b) of the Exchange Contract, not Article 8, prescribes the quantities of San Joaquin River water Reclamation was required to deliver to the Exchange Contractors in 2014").  In their reply, however, they argued the opposite:  "[T]hroughout 2014 …, Reclamation was never obligated to … deliver San Joaquin River water under Article 4(b)."  Appx2159 (footnote and quotation marks omitted); *accord* Appx2155-2156.  They then flipped back at oral argument, saying they "agree[d] that the Exchange Contractors were entitled to the flows identified in Article 4(b), … that's what they were entitled to" in 2014.  Appx845-846.

SJR water Reclamation had available to deliver to the Exchange Contractors, but it did not leave Reclamation unable to provide any such water at all.  Indeed, the water Reclamation delivered to the Exchange Contractors that year included "roughly 331,000 acre-feet" of water "from the Delta-Mendota Canal."  Appx28.  Because Reclamation was not (to quote article 4(b)) "unable … to deliver to the Contracting Entities substitute water from the Delta-Mendota Canal" in 2014, article 4(b) was not triggered.

Plaintiffs' contrary view—that article 4 applies "whenever" Reclamation is unable to deliver *all* of the "substitute water quantities specified" by article 8 (Br. 32)—has absurd consequences.  It would convert a shortfall of even a single acre-foot into the Exchange Contractors' loss of entitlement to the remaining 649,999 acre-feet of water, limiting them to the lesser amounts provided in article 4(b).  Such an interpretation would violate both the letter and intent of the Exchange Contract and senselessly punish the Exchange Contractors for the government's inability to meet its obligations.

> b.    Plaintiffs' contention that their contractual rights are not subordinate to those of the Exchange Contractors is unpreserved and meritless

Plaintiffs argue (Br. 36-40) that even if article 4(b) was not triggered in 2014, their contractual right to receive water from Reclamation is *not* subordinate to the Exchange Contractors' water-delivery right, and so (according to plaintiffs)

Reclamation breached their contract by giving available SJR water to the Exchange

Contractors rather than to plaintiffs.  This argument is both forfeited and meritless.

It is forfeited because plaintiffs never made it below.  Both Reclamation and

defendant-intervenors argued in seeking summary judgment that plaintiffs' breach

claim failed largely because the Friant Contract expressly makes plaintiffs' water-

delivery rights "subject to" (Appx368) the terms of the Exchange Contract—which

means that plaintiffs' water-delivery right is subordinate to that of the Exchange

Contractors.  Reclamation argued, for example, that "[b]ecause Article 3(n) of the

Friant Contract provides that the contractual rights of plaintiffs are subject to the

Exchange Contractor's contractual rights, Reclamation did not act unreasonably by

delivering the available upper [SJR]-sourced water to the Exchange Contractors."

Appx1694.  Similarly, defendant-intervenors argued that "each of [plaintiffs']

contracts expressly makes the government's water-delivery obligations to plaintiffs

*subordinate* to its water-delivery obligations to the Exchange Contractors."

Appx1929 (emphasis added); *accord* Appx1937.  Yet plaintiffs nowhere argued in

their summary-judgment opposition that their water-delivery rights were *not*

subordinate to those of the Exchange Contractors.  *See* Appx2242 (defendant-

intervenors' reply explaining that plaintiffs' opposition had "all but ignore[d]

defendant-intervenors' foundational—and undisputed—point that the

government's water-delivery obligation to plaintiffs is expressly subordinated to the government's water-delivery obligation to the Exchange Contractors").

Indeed, plaintiffs were on notice of the subordination argument long before summary-judgment briefing even began:  In dismissing plaintiffs' takings claim, the trial judge (then Chief Judge Kaplan) stated that "the contracts explicitly recognize that the contractual rights of … Plaintiffs are subordinate to the Exchange Contractors' vested water rights."  Appx19.  Yet plaintiffs chose not to argue in their later summary-judgment briefing that their rights are not subordinate. Having made that choice, plaintiffs cannot raise the argument for appeal.  *See, e.g.*, *San Carlos Apache Tribe v. United States*, 639 F.3d 1346, 1355 (Fed. Cir. 2011) (citing cases).

In any event, plaintiffs' argument is meritless because the Friant Contract unambiguously *does* subordinate plaintiffs' water-delivery right to the Exchange Contractors'.  As explained, for example, article 3(n) states that "[t]he rights of the Contractor under this Contract are subject to the terms of the contract for exchange waters, dated July 27, 1939, between the United States and … the Exchange Contractors[], … as amended."  Appx368.  Those "terms" include the Exchange Contractors' right to receive the specified quantities of substitute water.  Hence, plaintiffs' "rights … under th[e Friant] Contract are subject to" the Exchange Contractors' water-delivery right.  *Id.*

Plaintiffs' kitchen-sink responses (Br. 36-40) are borderline frivolous.  For example, plaintiffs say that "[t]he 'subject to' clause does not 'subordinate' the Friant Contracts to all demands of the Exchange Contractors, it only acknowledges that the United States will honor *the terms* of the Exchange Contract."  Br. 37-38. That argument—for which plaintiffs cite no authority—would render the "subject to" language meaningless, because even without the language, Reclamation would be bound to "honor … the Exchange Contract."  Plaintiffs' argument thus violates a "cardinal principle of contract construction: that a document should be read to give effect to all its provisions," *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995).

Plaintiffs alternatively assert (Br. 38) that the "subject to" clauses in their contracts "simply carr[y] out Reclamation's promise [to the Exchange Contractors] that it will *notify* subsequent contractors of the Exchange Contractors' reserved rights" (emphasis added).  This "notify" theory reduces the "subject to" clauses to mere recitals, which is untenable because the parties did not include those clauses in the contract's "Explanatory Recitals" (Appx349-353), instead placing them in the body of the contract—showing that they have operative and enforceable effect.

The "notify" theory also rewrites the contractual text, thereby violating another "of the basic precepts of contract interpretation," that a reading must "comport with the plain meaning of the clause," *Southern California Federal S&L*

*Association v. United States*, 422 F.3d 1319, 1329 (Fed. Cir. 2005). Under their "notify" theory (for which they cite nothing in support), plaintiffs interpret the provision in the Friant Contract that their rights are "subject to" the Exchange Contract as merely an acknowledgement that the Exchange Contract exists. But "subject to" means "liable, subordinate, subservient, inferior, obedient to." *Black's Law Dictionary* 1425 (6th ed. 1990). Because a "contract is read in accordance with its express terms and the plain meaning thereof," *C. Sanchez & Son, Inc. v. United States*, 6 F.3d 1539, 1543 (Fed. Cir. 1993), the "subject to" language renders plaintiffs' contractual rights "subordinate, subservient, [or] inferior" to the Exchange Contractors' rights—as Judge Bonilla concluded.[5]

Plaintiffs also say that Judge Bonilla "failed to explain how Friant Contractors' rights can be subordinate when … Reclamation … contractually promised to deliver [water] to the Friant Contractors." Br. 36; *accord* Br. 39 ("the United States' use of these reserved waters is now contractually obligated to" plaintiffs"). The simple answer is that this "contractual[] promise[]" is subordinated by the Friant Contract to the Exchange Contractors' water-delivery

---

[5] The foregoing likewise answers plaintiffs' claim (Br. 37) that their contract "does not even contain the word 'subordinate.'" Judge Bonilla never asserted that it does; he instead explained (as did Judge Kaplan, Appx19) that the language that *is* in the contract ("subject to") *means* that plaintiffs' contractual rights are subordinate to the Exchange Contractors'. As shown, that is entirely correct.

rights.  And plaintiffs' bald assertion notwithstanding, Judge Bonilla explained

precisely that.  Appx31-32.

Equally infirm is plaintiffs' claim (Br. 36-37) that Judge Bonilla "fail[ed] to

appreciate that … the Exchange Contractors *exchanged their reserved waters* of

the San Joaquin River to the United States … *for use by others*."  Again, the simple

answer is that the Exchange Contract gives Reclamation the right to make use of

SJR reserved waters "only so long as[] the United States does deliver to the

[Exchange Contractors] … substitute water in conformity with this contract."

Appx316.  In 2014, Reclamation did not do so.  And again, Judge Bonilla did not

"fail[] to appreciate" (Br. 36) this.  *See, e.g.*, Appx33 (quoting this same language

from the Exchange Contract).

It also bears noting that the language just quoted from plaintiffs' brief (and

similar language elsewhere therein) reflects a fundamental misunderstanding of the

basic exchange embodied in the Exchange Contract.  Plaintiffs imply that the

Exchange Contract confers an entitlement on *them* (and other non-parties to it) to

receive the SJR water in which Reclamation obtains rights when upon delivering

sufficient substitute water to the Exchange Contractors.  That is incorrect.  Even

setting aside the bedrock principle that a contract gives no rights to third parties

unless the contracting parties so intended (which plaintiffs do not claim), *see, e.g.*,

*Flexfab, LLC v. United States*, 424 F.3d 1254, 1259-1260 (Fed. Cir. 2005), the

Exchange Contract provides that when Reclamation supplies substitute water to the Exchange Contractors in conformity with the contract, it may provide SJR reserved waters to "others." Appx315. The term "others" leaves open to whom SJR water may be delivered. Plaintiffs are thus wrong to assert that "so long as the United States delivers substitute water in conformity with the Exchange Contract then all the reserved waters of the San Joaquin River are expressly stated *to be available* for beneficial use *only* by … the Friant Contractors." Br. 23 (emphases altered).[6]

Finally, plaintiffs assert (Br. 39) that Judge Bonilla "failed to appreciate that the Friant and Exchange Contracts are mutually beneficial by the very nature of the Exchange of Waters." But the suggestion that Judge Bonilla's decision is inconsistent with the notion that the Friant and Exchange Contracts are in some way mutually beneficial is both wrong and irrelevant. It is wrong because the parties to those contracts could both adopt a regime that was mutually beneficial, as plaintiffs posit, *and* create a hierarchy of rights to address situations in which there was not enough water to satisfy Reclamation's water-delivery obligations

---

[6] Plaintiffs similarly go astray in accusing Judge Bonilla (Br. 37) of "conflat[ing] the underlying rights to reserved/exchanged waters with the Exchange Contractors' current contractual rights, concluding that the Exchange Contractors possessed extra-contractual or superior rights to the Friant Contractors." While it is unclear what this even means, Judge Bonilla correctly understood that under the plain language of the Exchange and Friant Contracts, the Exchange Contractors *do* possess "superior rights to the Friant Contractors," *id.*

under both contracts.  In fact, it would be quite odd if the contracts did not make clear which rights took precedence in that situation.  And plaintiffs' argument is irrelevant because courts may not second guess the wisdom of the contracting parties' choices and intentions, as expressed in the plain language they chose. Courts must instead simply enforce contracts "as written," *e.g.*, *Cup v. AMPCO Pittsburgh Corporation*, 903 F.3d 58, 65 (3d Cir. 2018).  Judge Bonilla did so here, rightly holding that the Friant Contract subordinates plaintiffs' water-delivery right to that of the Exchange Contractors.

c.    Substitute water includes SJR water

Plaintiffs contend (e.g., Br. 24-27) that even if article 4(b) of the Exchange Contract was not triggered in 2014, such that Reclamation had to deliver 650,000 acre-feet of water to the Exchange Contractors, and even if plaintiffs' water-delivery rights are subordinate to the Exchange Contractors', Reclamation still breached the Friant Contract by delivering the Exchange Contractors *SJR* water. That is because (according to plaintiffs) SJR water is not substitute water.  But in fact it is:  The Exchange Contract defines "substitute water" as water "regardless of source."  Appx315.  Hence, if Reclamation had SJR water available in 2014 (which it did), it was required by article 8 of the Exchange Contract to deliver that water to the Exchange Contractors unless it gave them 650,000 acre-feet of water from other sources (which it did not).

Plaintiffs argue, however (Br. 25), that "the Exchange Contract cannot be read to mean that 'substitute water' includes the 'reserved waters' of the San Joaquin River because such waters are expressly stated to be beneficially used only by '*others than*' the Exchange Contractors." But article 4(a)'s permissive language—"may"—neither precludes Reclamation from delivering SJR water to the Exchange Contractors nor requires it to give that water to plaintiffs. In fact, Reclamation may provide SJR water to "others" (including plaintiffs) *only* "so long as[] the United States does deliver to the [Exchange Contractors] … substitute water in conformity with this contract." Appx316. Because in 2014 Reclamation did not deliver 650,000 acre feet of substitute water to the Exchange Contractors, it did not deliver substitute water "in conformity with" the Exchange Contract.

More generally, there is no merit to plaintiffs' pervasive suggestion (e.g., Br. 25-26) that it is senseless to treat SJR water as substitute water because the entire point of the "exchange" embodied in the Exchange Contract was SJR water for other water. It is true that the parties to the Exchange Contract anticipated that most if not all substitute water would come from sources other than the SJR; the contract says that expressly, Appx317. And consistent with that expectation, Reclamation—as plaintiffs note (Br. 25 & n.88))—satisfied its water-delivery obligation to the Exchange Contractors prior to 2014 with non-SJR water. But none of that changes the dispositive point: The plain language of the Exchange

Contract says that SJR water *can* be substitute water, by defining that term to encompass water "regardless of source," Appx315.

As to that point, plaintiffs argue (Br. 26) that the Exchange Contract's concededly "broad[]" definition "fails to evidence an intent different than the plain meaning of the terms 'exchange of water,' 'substitution of water supply,' and 'substitute water.'"  That wholly conclusory assertion is empty rhetoric.  The Exchange Contract's definition of "substitute water" means exactly what it says: Water delivered under the contract "regardless of source."  Appx315.  Contrary to plaintiffs' view, that definition makes perfect sense because a broad definition of "substitute water" maximizes the chance that Reclamation will be able to provide the required substitute water to the Exchange Contractors each year and therefore have the option to provide the exchanged reserved waters to others.  It maximizes the opportunity, in other words, that the parties to the Exchange Contract (Reclamation and the Exchange Contractors, *not* plaintiffs) will be able to enjoy their respective benefits under the contract.  What makes no sense is plaintiffs' claim that in 2014, Reclamation could—and in fact had to—make SJR water available to plaintiffs even though it had not supplied the Exchange Contractors with the required quantity of substitute water.  That is flatly contrary to the fundamental "exchange" embodied in the Exchange Contract.  *See* Appx315-316.

Plaintiffs also say (Br. 27) that "it is incoherent for San Joaquin River water to be a source of substitute water, because in the event the United States is permanently unable to deliver substitute water it is required to deliver reserved waters of the San Joaquin River under Article 4." That is not incoherent at all. It ensures that in the event Reclamation cannot fulfill its end of the basic bargain reflected in the Exchange Contract, the Exchange Contractors are relieved of *their* end of that bargain. Indeed, just a few pages later, plaintiffs agree (Br. 30) that "it makes sense that the Exchange Contractors revert to their reserved waters … if they are not receiving substitute water, either temporarily or permanently. These are the water rights they owned before the exchange, and if the exchange were interrupted, they ought to return to their … circumstance before the 1939 Exchange Contract."

The foregoing points also refute plaintiffs' related claim (e.g., Br. 21) that Reclamation "is only ever *required* to deliver *waters of the San Joaquin River* to the Exchange Contractors under Article 4." In reality, article 8 (in conjunction with article 3) requires the delivery of SJR water if other water is not provided in the quantity article 8 requires: Article 8 specifies the quantity of "substitute water" that must be delivered, and article 3 defines "substitute water" as water from any source.

Plaintiffs dispute this by arguing (Br. 22) that because article 4 is the only water-delivery provision of the Exchange Contract that uses the words "San Joaquin River," it is the only one that requires Reclamation to use SJR water to meet its water-delivery obligations. By contrast, plaintiffs say, article 8 "specifies the quantity and schedule for delivery of *substitute water*, but makes no mention of waters of the San Joaquin River." *Id*. There is no reason, however, why a contractual provision must specifically use the words "San Joaquin River" to create an obligation to deliver SJR water. Saying instead—as articles 3 and 8 together do—that (1) Reclamation must deliver a specified quantity of substitute water, and (2) "substitute water" is water from any source, is equally clear and effective in creating an obligation to deliver SJR water whenever the requisite quantity of substitute water cannot be supplied using other sources. The absence of the words "San Joaquin River" from article 8 thus does not exclude the SJR as a source of water delivered under that article.

> d.    Reclamation's storage of SJR water in Millerton Lake in 2014 did not breach the Friant Contract

As Judge Bonilla explained, "[i]n the southern portion of the Central Valley, San Joaquin River water is … diverted from its natural course, and forced into the Millerton Lake reservoir." Appx24. Plaintiffs briefly challenge (Br. 34-35) Reclamation's decision to store SJR water in Millerton Lake in 2014 before providing it to the Exchange Contractors. According to plaintiffs, this storage

breached the Friant Contact because it was not required by the Exchange Contract. *Id.* But as Judge Bonilla recognized, "simply because a contract does not require a certain action, it does not necessarily follow that the contract forbids that action." Appx36. In other words, the fact that the Exchange Contract did not compel Reclamation to store water in Millerton Lake does not mean that Reclamation's choice to do so violated the Friant Contract.

Plaintiffs respond by citing (Br. 35) Reclamation's promise in the Friant Contract (Appx368) not to deliver more SJR water to the Exchange Contractors than required under the Exchange Contract. But plaintiffs' argument here is not about the *delivery* of SJR water to the Exchange Contractors; it is about *storage* of water in Millerton Lake prior to delivery. Plaintiffs try to conflate the two by arguing in terms of Reclamation "'stor[ing] San Joaquin River water in Millerton Lake' for delivery under the Exchange Contract." Br. 34-35. But that attempted blurring does not change the fact that storing water in Millerton Lake and delivering that water are two separate things. Indeed, when Reclamation, in the years before 2014, delivered SJR water to plaintiffs in the quantities plaintiffs say is required, it first stored that water in Millerton Lake. Appx27. And while the Friant Contract obligated Reclamation not to deliver more SJR water to the Exchange Contractors than required by the Exchange Contract, that obligation in no way prevented it from storing water in Millerton Lake. Nor did any other

provision in the Friant Contract.  Storage, as Judge Bonilla recognized, simply

does not constitute an independent basis for plaintiffs' breach claim.

> e.    Plaintiffs' arguments regarding article 13(b) of the Friant
> Contract are baseless

Finally, plaintiffs attack (Br. 40-45) Judge Bonilla's ruling that their breach

claim is independently foreclosed by articles 13(b) and 19(a) of the Friant

Contract, Appx43-44.  As discussed, article 13(b) provides that "[i]f there is a

Condition of Shortage because of … drought … or actions taken by [Reclamation]

to meet legal obligations … then, except as provided in subdivision (a) of Article

19 of this Contract, no liability shall accrue against the United States … for any

damage, direct or indirect, arising therefrom."  Appx394.  And article 19(a)

provides that a contracting party's action cannot "be predicated upon arbitrary,

capricious, or unreasonable opinions or determinations."  Appx402.  "Read

together," Judge Bonilla observed, these provisions "effectively immunize[] the

government from a breach of contract claim where, as here, … the water allocation

decisions and actions of the Contracting Officer in the face of a severe drought,

coupled with Reclamation's legal obligations under the Exchange Contract, were

not 'arbitrary, capricious, or unreasonable.'"  Appx43-44 (footnote omitted).

Plaintiffs' challenges to this ruling fail for the reasons given in the balance

of this subsection.  But an important threshold point is that articles 13(b) and 19(a)

provide an independent ground for rejecting plaintiffs' breach-of-contract claim,

separate from the points that (1) article 8 of the Exchange Contract required Reclamation to deliver 650,000 acre-feet of substitute water to the Exchange Contractors in 2014 (including, if necessary, SJR water), and (2) articles 3(a) and 3(n) of the Friant Contract made this water-delivery obligation to the Exchange Contractors superior to Reclamation's water-delivery obligation to plaintiffs. To prevail, therefore, plaintiffs would have to demonstrate error both as to those separate points *and* as to Judge Bonilla's ruling regarding articles 13(b) and 19(a). As shown, they cannot do the former. Nor can they do the latter.

Plaintiffs assert (Br. 41-42) that articles 13(b) and 19(a) do not immunize Reclamation because "there was a substantial quantity of water available … in … Millerton Lake in 2014," and Reclamation "could make [that] water … available to Plaintiffs." That argument lacks merit for three reasons.

First, the argument ignores the Exchange Contractors' contractually superior right to receive that water. Because of that right, Reclamation "could make [the] water … available to Plaintiffs" (Br. 42) *only* by breaching its water-delivery obligation under the Exchange Contract. But that superior right cannot be ignored. Doing so is directly contrary to the text of article 13(b), which as noted confers immunity when a "Condition of Shortage"—defined as a condition that makes Reclamation "unable to deliver sufficient water to" plaintiffs, Appx354—results from physical causes beyond Reclamation's control, such as "drought" or "actions

… to meet legal obligations." Appx394. That is what occurred here. And it is decidedly different from the *Stockton* case law that plaintiffs invoke. There, the relevant Reclamation action that precluded immunity was "a federal decision to adjust its management of the CVP." *Stockton*, 583 F.3d at 1362. It was thus not (as here) either drought or actions "to meet legal obligations," Appx394, but rather what this Court called "a policy decision determined by the Federal Government itself," *Stockton*, 583 F.3d at 1362.

Second, plaintiffs' argument presumes that the water levels in Millerton Lake alone determine whether a Condition of Shortage exists. But the Friant Contract acknowledges that Reclamation looks to conditions in the Central Valley Project as a whole, not just Millerton Lake, to determine the quantity of water (if any) available for delivery to plaintiffs. *See* Appx354 (defining "Condition of Shortage" as a "condition respecting the Project during any Year such that the Contracting Officer is unable to deliver sufficient water to meet the Contract Total"). Plaintiffs therefore cannot show that Reclamation acted arbitrarily, capriciously, or unreasonably solely by pointing to what water was available in 2014 in Millerton Lake.

Third, plaintiffs' argument ignores article 19(a), which as explained confers immunity for the covered circumstances absent "arbitrary, capricious, or unreasonable opinions or determinations." Appx402. So the issue is not whether

Reclamation *could* have delivered any water stored in Millerton Lake to plaintiffs without breaching another legal obligation; the question is whether it was arbitrary, capricious, or unreasonable for Reclamation—at the time—to conclude otherwise. As to that, plaintiffs reprise their favored mantra that "a 'reasonable' breach of contract is nonetheless a breach." Br. 45. But as discussed, Judge Bonilla did not hold that Reclamation committed a "reasonable breach." He held that there *was no breach* under the plain language of articles 13(b) and 19(a), which absolve Reclamation of liability unless its conduct rested on "arbitrary, capricious, or unreasonable opinions or determinations." Appx402.

This is again different from *Stockton* (which plaintiffs invoke once more (Br. 45)). There, Reclamation argued that it had complied with a contractual provision obligating it to use "all reasonable means to guard against a condition of shortage." *Stockton*, 583 F.3d at 1360 (emphasis omitted). But whether Reclamation had complied with *that* provision was immaterial because the contract did not confer immunity on Reclamation simply for using "all reasonable means." The contract instead conferred immunity if a shortage was caused by events "beyond the control of the United States." *Id.* at 1360-1361 (emphasis omitted). And as discussed, this Court concluded that for those years where such conditions (i.e., drought) existed, immunity obtained, but for the years in which the shortage was caused by "a policy decision determined by the Federal Government itself," *id.* at 1362, there was no

immunity.  By contrast, here immunity *does* apply because the shortage was caused both by a drought (as plaintiffs acknowledge (Br. 27-28)) and because of "actions taken by [Reclamation] to meet legal obligations," Appx394.  Plaintiffs' pervasive reliance on *Stockton*'s mention of a "reasonable breach" is therefore misplaced, because the fact that here (unlike in *Stockton*) Reclamation's conduct was covered by the immunity provision means that here there was no breach at all, not that there was a "reasonable breach."

Lastly, plaintiffs note in passing (Br. 41) that "[t]he Government bears the burden of proving its asserted article 13 affirmative defense."  They offer no actual argument on the point, however, likely because nothing precludes a grant of summary judgment on an affirmative defense, *see, e.g.*, *John Bean Technologies Corporation v. Morris & Associates, Inc.*, 988 F.3d 1334, 1337, 1341 (Fed. Cir. 2021) (affirming summary judgment on an affirmative defense).  Regardless of the reason for plaintiffs' failure to offer any actual argument on the point in their opening brief, that failure waives the argument.  *See, e.g.*, *SmithKline Beecham Corporation v. Apotex Corporation*, 439 F.3d 1312, 1320 (Fed. Cir. 2006); *Wasica Finance GmbH v. Continental Automotive Systems, Inc.*, 853 F.3d 1272, 1285 (Fed. Cir. 2017).

\*    \*    \*

- 34 -

Plaintiffs' arguments do not change the two central points that together defeat their breach-of-contract claim: (1) under the Friant Contract's "subject to" language, Reclamation cannot deliver water to plaintiffs unless it has satisfied its water-delivery obligation to the Exchange Contractors, and (2) in 2014, Reclamation—as plaintiffs admit (Br. 32)—never satisfied its water-delivery obligation to the Exchange Contractors. Judge Bonilla's decision recognized all this, and the judgment rejecting plaintiffs' claim should be affirmed.

### C.    FWA's Additional Arguments Fail

The Friant Water Authority makes many of the same points as plaintiffs (not surprisingly given that the district plaintiffs are FWA members). The additional points FWA raises lack merit.

1.    Echoing plaintiffs, FWA contends (Br. 5-10) that Reclamation's water-delivery obligation to the Exchange Contractors in 2014 was governed by article 4(b) of the Exchange Contract rather than article 8. To support this argument, FWA asserts that: (i) "the trial court's holding[] can be sustained only by adding a term that does not appear in the Exchange Contract," namely the word "any" before "substitute water" in article 4(b); (ii) article 4(b) is triggered whenever Reclamation cannot deliver *all* the required water exclusively from non-SJR sources; (iii) Judge Bonilla's interpretation of the Exchange Contract writes article 4(b) out of the contract; and (iv) defendants illogically interpret the

Exchange Contract to mean that article 4(b) applies only when there is no SJR water available.  All four arguments are wrong.

First, whether article 4(b) applied in 2014 turns on whether Reclamation was—to quote 4(b) *without* adding the words "all"—"temporarily unable for any reason or for any cause to deliver to the [Exchange Contractors] substitute water from the Delta-Mendota Canal or other sources."  Appx316.  As explained, the answer to that question is no.  Indeed, plaintiffs' expert acknowledged (and FWA does not dispute) that "there was never a day [in 2014] in which Reclamation was unable to deliver water from the Delta-Mendota Canal to the Exchange Contractors," Appx2114.

Second, cutting and pasting the article 3 definition of "substitute water" into article 4(b), as FWA proposes, would render it incoherent, as the article would then govern when Reclamation is "unable … to deliver to the Contracting Entities [all water delivered hereunder]," FWA Br. 7 (alteration in original).  Reclamation obviously cannot be "unable … to deliver" water that it actually "delivered."

Third, Judge Bonilla's interpretation neither reads article 4(b) out of the Exchange Contract nor produces absurd results.  Under his (correct) reading, the article applies when no substitute water can be delivered to the Exchange Contractors *save from the San Joaquin River*.  Appx316.  That does not render article 4(b) meaningless or absurd.  To the contrary—and as FWA itself

acknowledges (Br. 23)—"it makes sense to allow the Exchange Contractors to …

receive the flows of the … San Joaquin River" whenever "the United States cannot

uphold its side of the exchange," i.e., cannot provide "a substitute supply *from*

*elsewhere*" (emphasis added).

Indeed, it is FWA's interpretation that produces absurd results.  As noted

earlier, under that interpretation, even if Reclamation could provide the Exchange

Contractors with 649,999 of the 650,000 acre-feet of substitute water required in a

critical year, article 4(b) would be triggered because of the missing one acre-foot—

resulting in the Exchange Contractors being entitled to the *lesser* amounts of water

stated in article 4(b).  That would turn articles 4(b) and (c) from provisions that

protect the Exchange Contractors (ensuring they receive their reserved SJR waters

if Reclamation cannot hold up its end of the contractual exchange) into provisions

that punish them if Reclamation comes up even the slightest bit short.  Like

plaintiffs, FWA offers no justification for such a senseless regime.

Finally, FWA is wrong that under defendants' position, article 4(b) applies

only if there is no SJR water available.  Rather, defendants accept as written article

4(b)'s express statement that it is triggered only if Reclamation cannot provide

substitute water from sources *other* than the SJR.  Appx316.  Far from being an

"absurd impossibility" (FWA Br. 9), defendants' interpretation sensibly reflects the

basic bargain embodied in the Exchange Contract.

2.    FWA's second overarching argument (Br. 10-12) is that Judge

Bonilla's reading of the Exchange Contract "render[s] illusory the 'exchange of

waters' at the heart of the agreement." *Accord id.* at 23-24.  That too is wrong.

FWA repeats plaintiffs' error in asserting (Br. 10-11) that the Exchange Contract

confers rights on third parties by guaranteeing (in FWA's words) "that when the

United States delivers substitute water in conformity with the Exchange Contract,

the reserved waters of the San Joaquin River *are ... available* for use by 'others

than' the Exchange Contractors—i.e., the Friant Contractors" (emphasis added).

That is not what the Exchange Contract says.  It says that when Reclamation

delivers substitute water in conformity with the contract, Reclamation may provide

reserved SJR waters to "others," without defining "others."  Appx315.  Like

plaintiffs, FWA disregards the contract text in asserting that "others" means only

"the Friant Contractors."  The text contains no such limitation.[7]

As discussed, moreover, the Exchange Contract states that Reclamation may

make SJR reserved waters available to others "only so long as[] the United States

does deliver to the [Exchange Contractors] … substitute water *in conformity with

this contract*."  Appx316 (emphasis added).  The phrase "in conformity with this

---

[7] FWA's repeated departures from the contract text underscore the wisdom
of prohibiting strangers to a contract (as plaintiffs and FWA are to the Exchange
Contract) from demanding judicial enforcement of a reading of the contract that all
the parties to it reject.

contract" means (as relevant here) delivering the *entire* quantity of substitute water to which the Exchange Contractors are entitled under the contract. There is no basis in the contractual text or in common sense—certainly FWA offers none—for FWA's suggestion (Br. 11) that Reclamation obtains rights to SJR water if it delivers even an acre-foot of substitute water to the Exchange Contractors. Under the "only so long as" language just quoted, Reclamation has no rights to *any* SJR reserved waters until it fully complies with its contractual obligations to deliver substitute water. Thus, contrary to FWA's argument, Reclamation's delivery of SJR water to the Exchange Contractors in 2014 does not suffer from a lack of consideration. It was part of Reclamation's effort to provide the full consideration it owed the Exchange Contractors and to thereby earn the consideration the Exchange Contractors would owe if Reclamation upheld its end of the bargain. Indeed, even plaintiffs (despite one boilerplate use in passing of the word "illusory" (Br. 19)) do not argue that defendants' and Judge Bonilla's reading of the Exchange Contract renders it illusory.

That, in fact, is why the Court should not even consider this argument: Absent "exceptional circumstances," courts of appeals rightly decline to consider arguments raised only by an amicus. *E.g.*, *Adkisson v. Jacobs Engineering Group, Inc.*, 35 F.4th 421, 432 (6th Cir. 2022); *Dutcher v. Matheson*, 840 F.3d 1183, 1204 (10th Cir. 2016); *Artichoke Joe's California Grand Casino v. Norton*, 353 F.3d

712, 719 n.10 (9th Cir. 2003). Because FWA does not even "attempt[] to offer …

a reason to depart from that practice here," *United States v. Ackerman*, 831 F.3d

1292, 1299 (10th Cir. 2016), this Court should not reach its argument. But if it

does, then it should reject the argument for the reasons just given.

     3.     In yet another atextual argument, FWA asserts (Br. 12-16) that the

Exchange Contract's definition of "substitute water" as encompassing water

delivered under the contract "regardless of source," Appx315, does not mean what

it says. This assertion rests on highly convoluted reasoning (Br. 13) that involves

"turnouts' and 'flood flows' and requires cross-referencing at least three other

provisions of the Exchange Contract. Yet based on this tangled logic, FWA (Br.

14) declares it "clear" that "the phrase 'regardless of source' does not require

Reclamation to *give* the Exchange Contractors San Joaquin River water previously

placed into storage in Millerton Lake; instead, it requires the Exchange Contractors

to *take* all flood flows from the San Joaquin River and Kings River as 'substitute

water.'" This argument mischaracterizes defendant-intervenors' reading, which is

not that "the phrase 'regardless of source' … require[s] Reclamation to *give* the

Exchange Contractors San Joaquin River water previously placed into storage in

Millerton Lake." *Id.* Defendant-intervenors' reading is that the Exchange Contract

requires Reclamation to deliver the specified quantity of substitute water to the

Exchange Contractors regardless of source, i.e., regardless of whether it was SJR

water, and regardless of whether such water was previously stored in Millerton Lake.

That aside, FWA's argument fails because it assumes that the meaning FWA confers upon "regardless of source"—that the Exchange Contractors must accept substitute water from any source—is inconsistent with Judge Bonilla's conclusion that it means Reclamation can deliver substitute water using any source.  The two are not mutually exclusive; the phrase "regardless of source" could mean both (at least in theory; as just explained, FWA's proffered purpose rests on severely attenuated reasoning).  Ultimately, FWA simply posits a possible (though strained) *additional* consequence—not an alternate one—of the "regardless of source" language.  That does not undermine Judge Bonilla's interpretation of the contract.

4.    FWA next argues (Br. 16-18) that "[p]roviding the Exchange Contractors with substitute water from supplies stored at Millerton Lake would effectively grant them storage rights in that Friant Division facility (which they have not paid to construct or maintain)."  That is a red herring because defendant-intervenors do not claim that the Exchange Contract "require[s] Reclamation to store water for the Exchange Contractors in Friant Division facilities" (*id.* at 18).  Indeed, FWA cites nothing to support its suggestion that defendant-intervenors have *ever* claimed such a right in this litigation.

What defendant-intervenors claim are the rights conferred on the Exchange Contractors by the Exchange and Friant Contracts, including the right to receive substitute water as specified in the Exchange Contract and the right to priority over plaintiffs' water-delivery right. But whether the water the Exchange Contractors receive is stored prior to delivery—and, if so, where—are matters not implicated here. And that is true no matter how many different ways FWA repeats the argument. *See, e.g.*, FWA Br. 16 ("Nor would it be proper to find an implied storage right in favor of the Exchange Contractors …. This Court should decline Defendants' invitation to re-write the Exchange Contract to provide Millerton Lake storage for the Exchange Contractors."). And because defendant-intervenors are not seeking the broad storage rights FWA posits, FWA's appeal to equity based on "the substantial sums expended by the Friant Contractors on CVP facilities" (Br. 17-18) does nothing to support reversal.

5.      Finally, FWA argues (Br. 19-24) that Reclamation's conduct here was arbitrary and capricious. This is another argument that should not be considered because it is raised only by an amicus. *See supra* pp.39-40. As FWA says (Br. 19), plaintiffs argue that arbitrary-and-capricious review is *inapplicable* here; they do not argue that if it is applicable, then Reclamation acted arbitrarily and capriciously. Indeed, plaintiffs expressly say (Br. 40) that "[t]his appeal … is not about whether Reclamation's actions were arbitrary, capricious, or unreasonable."

But even setting that aside—*and* indulging FWA's unstated premise that the standards governing claims under the Administrative Procedure Act apply to a breach-of-contract claim—FWA's arbitrary-and-capricious argument fails.

FWA first contends (Br. 20-21) that "an agency's decision may only be upheld on the grounds articulated in the decision," and that here, Reclamation's decision documents do not "even mention[] any of the legal bases on which Defendants have now urged the courts to affirm." To begin with, the legal principle FWA invokes is far less strict then FWA suggests. Both this Court and the Supreme Court have made clear that courts should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285-286 (1974), *quoted in In re Applied Materials, Inc.*, 692 F.3d 1289, 1294 (Fed. Cir. 2012). In fact, this Court has affirmed an agency decision despite describing the agency's conclusions as "cryptic." *In re Huston*, 308 F.3d 1267, 1280-1281 (Fed. Cir. 2002).

Here, Reclamation's "path" can easily be discerned, because contrary to FWA's claim (Br. 20), Reclamation *did* "mention[] … the legal bases on which Defendants have now urged the courts to affirm." Throughout this litigation, defendants' position has been (1) that plaintiffs' breach-of-contract claim fails because the drought in 2014 left Reclamation without enough water both to deliver

to the Exchange Contractors the amount of substitute water that article 8 required and to give plaintiffs the amount of water to which they claim entitlement, and (2) that the relevant contracts make plaintiffs' water-delivery right subordinate to that of the Exchange Contractors.  Reclamation's letter that FWA attaches to its brief (and labels the relevant decision document) addresses both points:  It discusses the drought and its impacts in detail, Br.  Addendum 1-2; and it says that Reclamation was allocating no water to plaintiffs "consistent with … Article 4 of your contract with Reclamation," i.e., the Friant Contract.  *Id.* at 2.  Article 4(d) of that contract provides that Reclamation will deliver water to plaintiffs "[s]ubject to the conditions set forth in subdivision (a) of Article 3 of this Contract."  Appx370.  And as explained, *see supra* p.10, article 3(a) says that Reclamation's water-delivery obligation to plaintiffs is "subject to … Articles 12 and 13 of this Contract," Appx362, with article 12 in turn providing that Reclamation "shall make all reasonable efforts to optimize delivery of the Contract Total subject to … the obligations of the United States under existing contracts, or renewals thereof, providing for water deliveries," Appx392.  Hence, even if Reclamation had an obligation under the arbitrary-and-capricious standard to alert its contractual counterparty about the contents of *their own contract* (a dubious proposition), the letter attached to FWA's brief would satisfy that obligation.  More generally, the letter easily satisfied any requirement here that Reclamation articulate the legal

bases it has invoked in this litigation.  FWA cites no case in which a court deemed

that requirement unsatisfied under remotely similar circumstances.

Reclamation's letter also belies FWA's claim (Br. 24) that "there is no

contemporaneous evidence that Reclamation took any steps to carry out—or even

consider—its responsibilities under Articles 12(a) and 13(a)," responsibilities

FWA describes as "to guard against a shortage in the quantity of water to be made

available to Friant Contractors," *id.* (quotation marks omitted).  In fact, the letter

lays out six different categories of "actions Reclamation is taking in response to the

… drought," such as adopting a "Water Plan which identifies specific measures

that are being undertaken in response to the current drought conditions." *Id.*

Addendum 1-2.  FWA cannot wave that away simply by ignoring it.  Nor can

FWA overcome everything the letter says by noting (Br. 22) that Reclamation did

not "reference" articles 12 and 13 by name.  There is no such formalistic mandate

under arbitrary-and-capricious review.  What matters is substance, and the letter

FWA cites was more than substantive enough to satisfy arbitrary-and-capricious

review—which this Court has explained "is *highly deferential* to the actions of the

agency," *National Organization of Veterans' Advocates, Inc. v. Secretary of

Veterans Affairs*, 927 F.3d 1263, 1267 (Fed. Cir. 2019) (emphasis added)

(quotation marks omitted).

Lastly, FWA claims (Br. 21-23) that Reclamation's conduct in 2014 represented an unexplained change in agency position. That claim rests on a clear misrepresentation. Specifically, FWA asserts that Reclamation's "refus[al] to apply Article 4(b)" of the Exchange Contract in 2014 (Br. 22) was a reversal because Reclamation supposedly stated in 2012 that "'[r]eleases from Friant Dam for delivery to the San Joaquin River Exchange Contractors via the San Joaquin River' *would be made* 'in accordance with Article 4.b of the San Joaquin River Exchange Contract.'" *Id.* (emphasis added) (quoting *id.* Addendum 6-7). But the sentence from which FWA carefully excerpts actually says the following:

> Releases from Friant Dam for delivery to the San Joaquin River Exchange Contractors via the San Joaquin River in accordance with Article 4.b of the San Joaquin River Exchange Contract may help satisfy Restoration Flow targets in some portions of the river, but would not be categorized as Interim or Restoration flows under the provisions of the Settlement.

*Id.* Addendum 6-7. What Reclamation said in 2012, then, was not that the described releases "*would* be made 'in accordance with Article 4.b,'" as FWA asserts (Br. 22 (emphasis added)). Reclamation instead said that any releases that *were* made "in accordance with Article 4.b." could help "satisfy [some] Restoration Flow targets." *Id.* Addendum 6-7. That statement is in no way inconsistent with Reclamation's actions in 2014. FWA's resort to such mischaracterization is telling—and it confirms that FWA's arbitrary-and-

capricious arguments should be rejected even if the Court decides to reach them despite their being raised only by an amicus.

### III.    JUDGE KAPLAN CORRECTLY DISMISSED THE TAKINGS CLAIMS BROUGHT BY OR ON BEHALF OF INDIVIDUAL WATER USERS

The operative complaint advances a takings claim based on the assertion that each plaintiff "holds a property right in the beneficial use of the water and water rights of the San Joaquin River which the United States acquired to benefit the landowners and water users within the Friant Division of the Central Valley Project."  Appx221.  Chief Judge Kaplan dismissed the takings claim for lack of standing, ruling that as a matter of law "none of the Plaintiffs possesses a property interest in the water supplied to them by or through Reclamation."  Appx16.  She thus rejected plaintiffs' theory that "beneficial use of project water confers rights independent of the rights provided under" the Friant Contract, holding that "Plaintiffs cannot assert property rights greater than those secured through their contracts, which give a priority to the Exchange Contractors."  Appx19.

Plaintiffs notably do not challenge the dismissal as to the district plaintiffs. Although two sub-headers in their brief (Br. 45-46) refer to the "Friant Contractors," i.e., the district plaintiffs, the brief actually argues only that Chief Judge Kaplan erred in dismissing the takings claim as to what plaintiffs call "Growers," by which they mean: (1) the individual plaintiffs (Br. 45-54) and (2) CVP water users within the district plaintiffs' boundaries, as to whom plaintiffs say

- 47 -

the districts can bring a representative takings claim (Br. 55).  Plaintiffs' arguments

regarding dismissal as to both groups lack merit.[8]

### A.    Plaintiffs' Argument For A Property Right In SJR Water Is Not Supported By Any Case They Cite (Or Any Other Law)

Success on a takings claim requires a plaintiff to show that she possesses "a

property interest for purposes of the Fifth Amendment."  *Members of the Peanut*

*Quota Holders Association v. United States*, 421 F.3d 1323, 1330 (Fed. Cir. 2005),

*quoted in* Appx16.  Hence, "the government's physical appropriation of water to

which a plaintiff *has valid rights* under state law may constitute a physical taking."

Appx16 (emphasis added) (citing *Casitas Municipal Water District v. United*

*States*, 543 F.3d 1276, 1296 (Fed. Cir. 2008), and *Washoe County v. United States*,

319 F.3d 1320, 1326 (Fed. Cir. 2003)).  But an indispensable prerequisite for any

such taking is the plaintiff's possession of a valid water right.

Here, the individual plaintiffs and water users have no such right under

California law—which is what matters because plaintiffs' brief makes clear that

they claim a property right only under California law.  They argue, for example,

---

[8] The failure of plaintiffs, in their opening brief, to challenge the dismissal of the district plaintiffs' takings claim waives that challenge on appeal, as plaintiffs cannot raise it for the first time in reply.  As this Court has explained, allowing a new reply argument would both create "unfairness to the appellee[s] who do[] not have an opportunity to respond," and be "unfair to the court itself, which without the benefit of a response from appellee[s] to an appellant's late-blooming argument, would run the risk of an improvident or ill-advised opinion."  *Carbino v. West*, 168 F.3d 32, 35 (Fed. Cir. 1999) (quotation marks omitted).

that "state law, *not federal law*, creates and defines water rights in a federal

Reclamation project (unless inconsistent with a specific congressional directive),"

an exception that plaintiffs never say is met here.  Br. 48-49 (emphasis added); *see*

*also* Br. 3, 16, 45-46 (arguing for rights arising under California law).  Indeed, the

operative complaint states eighteen different times that plaintiffs' claimed "water

rights are … property rights *under California law*."  Appx199-215 (emphasis

added).  Any argument for a non-California property right is therefore waived.[9]

Plaintiffs repeatedly cite cases that they say support their claims of property

rights, including *Ickes v. Fox*, 300 U.S. 82 (1937); *Nebraska v. Wyoming*, 325 U.S.

589 (1945); and *Nevada v. United States*, 463 U.S. 110 (1983).  But none of these

decisions applied California law.  As this Court has explained, *see Klamath*

*Irrigation District v. United States*, 635 F.3d 505, 512 (Fed. Cir. 2011), they

instead involved the law of other states.  And it was water rights under those non-

---

[9] In any event, any claim of a federal water right would fail.  Plaintiffs repeatedly cite (e.g., Br. 47) the Reclamation Act's provision that any right to use water shall, if the water is "acquired under the provisions of this Act," be "appurtenant to the land irrigated," 43 U.S.C. § 372.  But that does not itself create a right to use water; it instead recognizes that any such right—if created by *another* source of law—is appurtenant to the land irrigated so long as the water is acquired under the provisions of the Reclamation Act.  The Court of Federal Claims, in fact, has previously explained at length why the notion of a federal property right fails under the text and legislative history of the Reclamation Act, and *California v. United States*, 438 U.S. 645 (1978).  *See Klamath Irrigation District v. United States*, 67 Fed. Cl. 504, 516-523 (2005), *rev'd on other grounds*, 635 F.3d 505 (Fed. Cir. 2011).

California laws that *Ickes*, *Nebraska*, and *Nevada* referred to in the passages plaintiffs repeatedly cite (*e.g.*, Br. 47 & n.151).  Likewise inapposite for the same reason are two decisions from this Court that plaintiffs also cite (Br. 52-53): *Klamath Irrigation District v. United States* and *H.F. Allen Orchards v. United States*, 749 F.2d 1571 (Fed. Cir. 1984).  *Klamath* involved Oregon law while *H.F. Allen* (like *Ickes*) involved the law of Washington State; in fact, the word "California" appears nowhere in the *H.F. Allen* decision.

Plaintiffs seek to minimize the fact that *Klamath* involved only Oregon law by arguing (Br. 53) that the water project there "straddles the border between Oregon and California, and the holding applied to owners of irrigated farmland in both Oregon and California."  But the unsurprising fact that this Court's holding applied to all parties in the case, wherever they resided, is irrelevant.  What matters is that the holding involves Oregon law and not California law.  Indeed, this Court noted that in an earlier appeal in the case, it had "concluded that *Oregon property law* was pertinent to the question of whether plaintiffs possessed property rights in Klamath Project water."  *Klamath*, 635 F.3d at 514 (emphasis added).  This Court simply never said anything about California law.

As to California law, the California Supreme Court has explained that "[t]he exclusive means of acquiring appropriative rights" under that law is a statutory procedure enacted in 1913 and amended in 1923.  *People v. Shirokow*, 605 P.2d

859, 864 (Cal. 1980); *see also* Cal. Water Code § 102 ("[T]he right to the use of water may be acquired by appropriation in the manner provided by law."). Plaintiffs have never alleged here that they hold state-issued permits for the water at issue. In fact, the operative complaint recognizes that "[t]he United States holds legal title to [that] water and water rights." Appx221. Plaintiffs' opening brief likewise acknowledges (Br. 49-50) both that "the United States … received [state-law] permits for the diversion and storage of essentially all of the waters of the San Joaquin River at Friant Dam," and that the issuing agency—California's State Water Resources Control Board ("SWRCB")—"declined" plaintiffs' request to "issue the permits for these water rights" in their name.

Plaintiffs assert, however (Br. 48), that Reclamation's title is "at most nominal," and that individual users of water conveyed in past years own a "beneficial interest" in the water to be delivered in future years. Defendant's brief addresses Chief Judge Kaplan's reasons for rejecting this argument, and to avoid burdening the Court, defendant-intervenors will not do so here. But there are two additional reasons why both the individual plaintiffs and water users within the district plaintiffs' boundaries—i.e., the only two groups as to whom plaintiffs have appealed the dismissal of the takings claim, *see supra* pp.47-48—lack standing to maintain that claim. First, under California law, use of water provided by an irrigation district, water district, or similar entity does not confer a water right on

the user.  *See infra* Part III.B.  Second, any water right would be subject to the

limitations in the Friant Contract, including both subordination to the rights of the

Exchange Contractors, and immunity for the United States for shortages caused by

either drought or actions to meet legal obligations.  These contract limitations

confirm that no right to water of the individual plaintiffs or district water users was

taken by Reclamation in 2014.  *See infra* Part III.C.

### B.    Under California Law Water Users Do Not Acquire Water Rights Through Use Of Water Supplied To Them By A District Or Utility

The district plaintiffs fall into three different categories: irrigation districts,

water districts, and utility districts.  The operative complaint alleges that each

water user within the district plaintiffs' boundaries has a property right because

each receives water from a district in one or more of those three categories.

Appx216-220.  But California law precludes any claim of a water right by users of

waters supplied by districts in each of those categories.

Irrigation districts are governed by California's Irrigation District Law, *see*

Cal. Water Code §§ 20500-29978, which provides that "[n]o right in any water or

water right owned by the district shall be acquired by use," *id.* § 22262.  Water

districts, meanwhile, are governed either by California's Water District Law (*id.*

§§ 34000-38501) or its Water Storage District Law (*id.* §§ 39000-48401).  Like the

Irrigation District Law, the Water District Law provides that "[n]o right in any

water or water right owned by the district shall be acquired by use permitted under this article," *id.* § 35428. And the Water Storage District Law provides that "legal title to all property acquired under the provisions of this division vests [not in users but] in the district immediately. All property [(and in California water is considered a property right)] is held [not by users but] by the district in trust for the uses and purposes set forth in this division." *Id.* § 43505. Finally, those who receive water from utility districts likewise have no California-law property interest in that water, as "it has long been established that [b]y paying bills for service [utility customers] do not acquire any interest, legal or equitable, in the property used for their convenience or in the funds of the company." *Ponderosa Telephone Company v. Public Utilities Commission*, 197 Cal.App.4th 48, 57 (2011) (alterations in original) (quotation marks omitted). A farmer in an irrigation district, for example, has a vested appurtenant right, but only for "water service from the District," not an appurtenant water *right*. *Abatti v. Imperial Irrigation District*, 52 Cal.App.5th 236, 262 (2020). Such farmers otherwise "do not hold traditional appropriative rights entitling them to 'divert[ ] and use[ ] water.'" *Id*. Simply put, the law gives landowners a right enforceable against the district to an allocation of available water, but not a right in the water itself.

    This rule is well-founded. Fragmenting ownership of districts' water among dozens, hundreds, or even thousands of individual users would thwart districts'

ability to reasonably manage their water supplies for the public purposes for which the districts were formed and operate.  As just explained, that is (sensibly) not the law.  The water users within the district plaintiffs thus do not acquire a right in water supplied to them by the district plaintiffs.

### C.  Plaintiffs Cannot Claim Rights to Water Greater Than The Rights Afforded by the Friant Contract

"What the modern cases establish … is that contracts for federal water service … do not create continuing 'water rights' that are enforceable, except in strict compliance with identified contracts." *San Luis Unit Food Producers v. United States*, 772 F.Supp.2d 1210, 1244 (E.D. Cal. 2011), *aff'd*, 709 F.3d 798 (9th Cir. 2013).  That conclusion is consistent with cases in which this Court has "held that when the government [allegedly] breaches a contract, a party must seek compensation from the government in contract rather than under a takings claim." *Piszel v. United States*, 833 F.3d 1366, 1376 (Fed. Cir. 2016); *accord, e.g.*, *Baggett Transportation Company v. United States*, 969 F.2d 1028, 1034 (Fed. Cir. 1992).  Plaintiffs therefore cannot salvage their contract claim by asserting that their use of water provided under contracts gives them property rights that support a takings claim.  The Friant Contract specifies the terms under which Reclamation will deliver water to the district plaintiffs.  Even if use of that water created a property interest, that interest would be limited by the contract terms.

A district must enter a contract with Reclamation to receive CVP water. *See, e.g.*, 43 U.S.C. § 423e; *Tehama-Colusa Canal Authority v. U.S. Department of Interior*, 721 F.3d 1086, 1089, 1091 (9th Cir. 2013). In its Decision 935 ("D-935"), which granted the United States permits for Friant Division, the SWRCB specifically recognized this requirement. Plaintiffs assert (Br. 46, 49-50) a property right based on the condition in D-935 that the "right to the beneficial use of water for irrigation purposes" would be "appurtenant to the land on which said water shall be applied," Appx1084. But D-935 makes this condition "[s]ubject to the existence of long-term water delivery contracts between the United States and public agencies and subject to the compliance with the provisions of said contracts by said public agencies." *Id.* Thus, the "appurtenant" term in D-935 on which plaintiffs rely is subject to the Friant Contract's terms. *Id.*

The primacy of CVP contract terms over contrary rights allegedly afforded by California water law was illustrated in *Tehama-Colusa Canal Authority v. U.S. Department of Interior*. There, a group of CVP contractors claimed a right to a preferential allocation of CVP water based on California's "area of origin" statutes (Cal. Water Code §§ 11460, 11463, 11128). *See* 721 F.3d at 1090. The plaintiff, which represented those contractors, objected to Reclamation delivering anything less than a full contract allocation to them while making deliveries of any amount to CVP contractors outside the "area of origin" of Sacramento River water. *Id.* at

1088.  The Ninth Circuit rejected that claim, holding the area-of-origin laws did "not require the Bureau to provide Central Valley Project contractors priority water rights, because contracts between the Canal Authority and the Bureau contain provisions that specifically address allocation of water during shortage periods." *Id.* "Article 12 of the renewal contracts," the court elaborated, "authorized the Bureau to determine shortages and apportion waters in times of shortage without regard to area of origin." *Id*. at 1093.  And, it concluded, "Article 12 forecloses any persuasive argument that Canal Authority and its members are entitled, during times of shortage, to receive the full complement of contracted water supply." *Id*. at 1094.  For the reasons explained in Part II, including subordination to the Exchange Contract and the shortage/legal-obligations provision in article 13(b) of the Friant Contract, the district plaintiffs had no contractual right to more water than they received in 2014.  This result forecloses any claim for a taking by the individual plaintiffs and other water users served by the district plaintiffs as well.

In sum, the dismissal of plaintiffs' takings claims should be affirmed because under California law, water users acquire no property right based on their use of water supplied by district plaintiffs, and because, even if they had that right, it would be limited by the terms of the Friant Contract.

## CONCLUSION

The judgment of the Court of Federal Claims should be affirmed.

January 17, 2023

Respectfully submitted,

/s/ David T. Ralston, Jr.
DAVID T. RALSTON, JR.
FRANK S. MURRAY
JULIA DI VITO
FOLEY & LARDNER LLP
3000 K Street N.W., Suite 600
Washington, D.C. 20007

*Counsel for Byron Bethany Irrigation
District, Del Puerto Water
District, and James Irrigation District*

/s/ Anthony T. Fulcher
ANTHONY T. FULCHER
SANTA CLARA VALLEY WATER DISTRICT
5750 Almaden Expressway
San Jose, California 95118
(408) 265-2600

*Counsel for Santa Clara Valley Water
District*

/s/ Andrew E. Shipley
ANDREW E. SHIPLEY
DANIEL S. VOLCHOK
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue N.W.,
Washington, DC 20006
(202) 663-6000

*Counsel for Westlands Water District*

/s/ Daniel O'Hanlon
DANIEL O'HANLON
KRONICK MOSKOVITZ
    TIEDEMANN & GIRARD
1331 Garden Highway, 2nd Floor
Sacramento, California 95833
(916) 321-4500

REBECCA AKROYD
SAN LUIS & DELTA-MENDOTA
    WATER AUTHORITY
1331 Garden Highway, 2nd Floor
Sacramento, California 95833
(916) 321-4321

*Counsel for San Luis & Delta-
Mendota Water Authority*

/s/ Paul R. Minasian
PAUL R. MINASIAN
ANDREW J. MCCLURE
JACKSON A. MINASIAN
MINASIAN, MEITH, SOARES,
   SEXTON & COOPER, LLP
1681 Bird Street / P.O. Box 1679
Oroville, California 95965-1679
(530) 533-2885

*Counsel for San Joaquin River Exchange
Contractors Water Authority, San Luis
Canal Company, Central California
Irrigation District, Firebaugh Canal Water
District, and Columbia Canal Company*


/s/ Ellen L. Wehr
ELLEN L. WEHR
GRASSLAND WATER DISTRICT
200 W. Willmott Avenue
Los Banos, California 93635
(209) 826-5188

*Counsel for Grassland Water District*

/s/ Robert M. Palumbos
ROBERT M. PALUMBOS
DUANE MORRIS LLP
1 Market, Spear Tower, Suite 2200
San Francisco, California 94105
(415) 957-3000

*Counsel for San Luis Water District*

## STATEMENT OF CONSENT

Pursuant to Circuit Rule 32(g)(3)(B), the undersigned represents that counsel for each defendant-intervenors not represented by the undersigned have consented to their signatures on this brief.

/s/ Daniel O'Hanlon
DANIEL O'HANLON


## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with the type-volume limitation of this Court's Rule 32(b) in that, according to the word-count function of the word-processing system used to prepare the brief (Microsoft Word), the brief contains 13,141 words, excluding the portions exempted by Federal Rule of Appellate 32(f) and this Court's Rule 32(b)(2).

/s/ Andrew E. Shipley
ANDREW E. SHIPLEY